UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN F. EVANS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:09 CV 867 ERW |
| | ) | DDN |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court for judicial review of the final decision of defendant Commissioner of Social Security denying the application of plaintiff Shawn F. Evans for disability insurance benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (the Act), 42 U.S.C. §§ 401-34 and §§ 1381-1383f, respectively. The action was referred to the undersigned United States Magistrate Judge for review and a recommended disposition under 28 U.S.C. § 636(b). For the reasons set forth below, the undersigned recommends that the Administrative Law Judge's decision be affirmed.

**I.  BACKGROUND**

On July 14, 2006, plaintiff filed applications for DIB and SSI, alleging an onset date of February 27, 2006. (Tr. 173-38, 179-82.) Plaintiff alleged disability due to migraine headaches, high blood pressure, mood swings, a brain cyst, sleep deprivation, and a right rotator cuff tear. (Tr. 199.) His applications were denied initially on October 26, 2006. (Tr. 100, 102, 120-24.) On January 15, 2008, a hearing was held before an ALJ who ordered a consultative examination.

On April 7, 2008, the ALJ issued an unfavorable decision. (Tr. 104-19.) The ALJ reopened the hearing to consider the post-hearing report from the consultative examiner. (Tr. 140.) On November 19, 2008, a supplemental hearing was held before the ALJ. On December 30, 2008

the ALJ issued an amended decision finding that plaintiff was not disabled as defined under the Act. (Tr. 5-17.) The Appeals Council denied plaintiff's request for review. (Tr. 1-4.) Thus, the December 30, 2008 amended decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL AND OTHER HISTORY

Plaintiff was born on November 22, 1971. On February 10, 2004, plaintiff saw David Easterday, D.O., complaining of headaches and mood swings. On February 13, 2004, a computed tomography (CT) scan of plaintiff's head revealed findings compatible with a posterior fossa cranial midline arachnoid cyst,[1] but was otherwise unremarkable. (Tr. 285.) A CT scan of plaintiff's cervical spine revealed straightening of the cervical lordosis. (Tr. 286.)

On March 3, 2004, plaintiff saw Laurence J. Kinsella, M.D., for a neurological examination. (Tr. 270-73). Plaintiff complained of severe headaches two to three times per week, which were worsened by excessive agitation, noise, and light. (Tr. 270.) Plaintiff stated that ibuprofen "usually" resolved his headaches within two hours. (Tr. 270.) Physical and neurological examinations were normal and revealed intact sensation, normal gait, and full motor strength. (Tr. 272.) Dr. Kinsella diagnosed migraines that were probably exacerbated by underlying obstructive sleep apnea. (Tr. 272.) He prescribed nortriptyline, an antidepressant, and ordered a sleep study. (Tr. 272.)

On September 13, 2004, plaintiff complained of headache pain for one week causing nausea. (Tr. 290.) He was doing better since taking Tricor, used to treat high cholesterol.

Sleep studies were performed on October 4 and 14, 2005, which indicated that plaintiff had moderate obstructive sleep apnea which was effectively treated with a Continuous Positive Airway Pressure (CPAP)

---

[1] A fluid-filled cyst located between the brain or spinal cord and the arachnoid membrane, one of the three membranes that cover the brain and spinal cord; usually congenital in origin. Stedman's Medical Dictionary, 480 (28th ed. 2006); www.nlm.nih.gov/medlineplus (last visited February 8, 2010).

machine. (Tr. 331.) A full night's use of the CPAP device resulted in a normal index of apnea, or pause in breathing, to hypopnea, or instance of excessively shallow breathing, resulting in the elimination. (Tr. 331.) He was also obese, and had hypersomnia,[2] which should significantly improve with two to three weeks of compliant nasal CPAP use. (Tr. 298-99.)

On August 10, 2006, plaintiff was seen in the emergency room with complaints of mild chest pain. (Tr. 335-37.) Physical examination was normal. (Tr. 335-36.) He was admitted to Lincoln County Medical Center and was discharged in stable condition the next day. (Tr. 338-54.) Upon discharge, a physical examination was normal and the treatment provider noted no neurological deficits. (Tr. 338-39.) On August 18, 2006, a physical examination was again normal. (Tr. 383.)

On September 5, 2006, plaintiff underwent a consultative examination performed by Gary W. Rucker, D.O. (Tr. 311-18.) He was 5'9" tall, weighed 241 pounds, and had a body mass index of 34. Plaintiff reported experiencing headaches for the past five years. (Tr. 315.) Ibuprofen and rest "occasionally" helped alleviate his headaches. (Tr. 315.) Plaintiff also reported experiencing dizziness when he moved quickly. (Tr. 315.) On examination, plaintiff's sitting and supine straight leg raises were negative bilaterally. Dr. Rucker found no sensory loss or change. (Tr. 317.) Plaintiff moved normally about the examining room and parking lot. He had a normal gait and very strong grip strength bilaterally. (Tr. 317.) There was some mild tenderness of the musculature of the posterior neck. (Tr. 311.) Plaintiff also had mild crepitus or cracking on rotation of his right shoulder, but had good range of motion. (Tr. 317.) On mental status examination, plaintiff's behavior was appropriate, and his appearance and cognitive functioning were "ok." (Tr. 311.)

Dr. Rucker's impressions included controlled hypertension, "apparently severe" hyperlipidemia or high cholesterol, cephalgia or headache of uncertain etiology, fossa arachnoid cyst, muscle spasm of the neck, and moderate obstructive sleep apnea. (Tr. 318.) Dr. Rucker

---

[2]A condition in which sleep periods are excessively long. Stedman's at 926.

-3-

opined that plaintiff would have no problems with sitting, walking, hearing, speaking, or handling objects. (Tr. 311.) He noted that if plaintiff had true vertigo he might have some problems with standing, lifting, carrying, and working at heights. (Tr. 311.)

Dr. Rucker completed a form for Disability Determinations Services (DDS) wherein he wrote plaintiff had some mild tenderness of the paravertebral musculature of the posterior neck, as well as straightening of cervical lordosis, which can indicate muscle spasms. He also found some underlying psychological problems affecting his attitude and resulting in stress and irritability. He opined this may be due to his physical metabolic problems and especially sleep apnea, but he could not cannot rule out depression or an anxiety syndrome. (Tr. 311.)

On June 1, 2007, plaintiff was seen by Jo Ann Coons, R.N. PAC, with complaints of a right-side chest ache, headache, and blurry vision. (Tr. 381.) Physical examination revealed some vision abnormalities and a slight cough, but was otherwise normal. (Tr. 381.) Two weeks later, plaintiff complained of a sore throat. (Tr. 380.) Symptoms included stuffy nose and cough. Ms. Coons's assessment was sinusitis and cough. (Tr. 380.)

On June 21, 2007, plaintiff complained of a headache, reporting that his headaches were getting worse and occurring more often. (Tr. 379.) Plaintiff also stated that he experienced dizziness with standing up. (Tr. 379.) Physical examination revealed some vision abnormalities, but was otherwise normal. (Tr. 379.) Ms. Coons noted no neurological abnormalities and instructed plaintiff to continue taking ibuprofen. (Tr. 379.)

On November 30, 2007, plaintiff was seen by John Foxen, M.D., complaining of headaches when his blood pressure increased. (Tr. 378.) Physical examination was normal. (Tr. 378.) Approximately two weeks later, plaintiff returned to Dr. Foxen for follow-up, stating he continued to experience headaches. Physical examination was again normal. (Tr. 377.)

On December 20, 2007, plaintiff was seen by Dr. Foxen for the completion of disability paperwork. (Tr. 376.) Physical examination

was normal and revealed intact cranial nerves and no sensory deficits. (Tr. 376.) Dr. Foxen prescribed Topiramate, which is used to treat migraine headaches. (Tr. 376.) The same day, Dr. Foxen completed a pre-printed form titled Headaches Residual Functional Capacity Questionnaire. (Tr. 355-60.) Dr. Foxen noted that he had treated plaintiff "every few months" for the previous three years. (Tr. 355.) He stated that plaintiff had daily severe tension/migraine headaches; that plaintiff had vertigo, nausea/vomiting, malaise, mood changes, and mental confusion associated with his headaches. (Tr. 355-56.) Bright lights, lack of sleep, noise, stress, hunger, and weather changes triggered plaintiff's headaches. (Tr. 356.) Plaintiff's headaches were improved by lying in a dark room, finger pressure/massage, and cold packs. (Tr. 357.) When asked to identify any positive test results and objective signs of plaintiff's headaches, Dr. Foxen checked the line marked CT scan and noted the February 2004 CT scan showing plaintiff's fossa arachnoid cyst. (Tr. 357.) Dr. Foxen indicated plaintiff's medications consisted of ibuprofen and topiramate, and he experienced no side effects. (Tr. 358.) Dr. Foxen opined that plaintiff would need to take unscheduled breaks lasting more than thirty minutes on an hourly basis during an eight-hour workday and that he would be precluded from performing basic work activities during a headache. (Tr. 358-59.) He further opined that plaintiff was incapable of even low stress jobs and that he would be absent from work more than four times per month. (Tr. 359.) He indicated no limitations with respect to plaintiff's ability to sit, stand, walk, lift, bend, stoop, or crouch. (Tr. 359-60.)

On January 29, 2008, plaintiff was seen by Amy Rauchway, D.O., for a neurological evaluation. (Tr. 399-409.) His medications included ibuprofen; Tylenol; the pain reliever Ultram; Topamax (name brand of generic drug topiramate); and Naproxen, a nonsteroidal anti-inflammatory drug (NSAID). (Tr. 399.) Physical examination revealed a positive Phalen's sign, a wrist flexion test, over the right wrist, but was otherwise normal. (Tr. 400.) Dr. Rauchway diagnosed right median neuropathy and chronic headaches complicated by obstructive sleep apnea and medication overuse. (Tr. 400.) She instructed plaintiff to

discontinue the NSAIDs and Tylenol and to make sure his CPAP machine settings were correct. (Tr. 400.)

Two days later, plaintiff informed Dr. Foxen that his headaches had improved with decreased ibuprofen use. (Tr. 411.) Physical examination was normal. Dr. Foxen's impression was that plaintiff's headaches were "improving," and he instructed plaintiff to continue using topiramate. (Tr. 411.)

On February 15, 2008, plaintiff underwent a consultative examination performed by Riaz A. Naseer, M.D. (Tr. 385-87.) Plaintiff complained of headaches for the previous ten years. (Tr. 385.) He stated that he stopped taking all of his headache medications except for Topamax. (Tr. 385.) Physical and neurological examinations were normal and he had no sensory deficit. (Tr. 385-86.) Dr. Naseer diagnosed chronic headaches of a migrainous nature, which were being treated with prophylactic therapy. (Tr. 386.)

Dr. Naseer completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) in which he opined plaintiff could lift up to 50 pounds frequently and 100 pounds occasionally. (Tr. 390-95.) In an eight hour workday, plaintiff could sit for four hours, stand for four hours, and walk for four hours. (Tr. 391.) Dr. Naseer further opined that plaintiff could tolerate exposure at a quiet noise level. (Tr. 394.)

**Testimony at the Hearing**

Plaintiff appeared and testified at a hearing held on January 15, 2008. (Tr. 33-97.) He testified that he was 36 years old at the time, completed one year at a specialty painting school, and previously worked as a drywall finisher and machine shop job foreman. (Tr. 39-45.)

Plaintiff testified that he gets up about 7:00 a.m. with his wife and three kids and retires about 8:30 p.m. He testified that he does not do much all day except rest and read car magazines; that he has no social life; and that he does not help around the house. (Tr. 46-57.) He testified that his primary physical problems were headaches and dizziness; that his blood pressure and cholesterol were "off the charts"; that any kind of aggravation triggers his headaches; that he

is depressed and has crying spells three or four times per week; and that he does not want to be around people. (Tr. 57-80.)

Plaintiff's wife of eight years also testified at the hearing. She testified that plaintiff has drastic mood changes because of his headaches; that he has never seen a mental health professional; that he is trying to see a neurologist but is unable to find one because of insurance problems; and that she does all of the work around the house. (Tr. 82-88.)

Vocational Expert (VE) Jeffrey Magrowski also testified at the hearing. The first hypothetical assumed a person who was 36 years old with a high school education who was capable of performing the exertional demands of medium work as defined in the Social Security regulations. The person could lift, carry, push, and pull 50 pounds occasionally, 25 pounds frequently; and sit, stand and walk six out of eight hours. The person should have no concentrated exposure to unprotected heights; is limited to simple, repetitive tasks and instructions and only occasional interaction with supervisors, co-workers, and the public; and involved simple repetitive tasks. Based on the aforementioned, the VE testified that the hypothetical person could not return to any of his past relevant work. The VE testified, however, that there were other jobs available in the national economy, such as a linen or laundry room attendant, dining room attendant, general laborer. (Tr. 91-93.)

A second hypothetical by plaintiff's attorney assumed the same, except that the person would miss more than four days of work per month because of headache activity. The VE opined that he did not know of any any jobs that a person could maintain under that hypothetical. (Tr. 93.) As to a person who needed to take a break and lie down one to two times per day because of headaches, the VE testified that if he could not do that during lunch breaks, he could not maintain the job. (Tr. 94.) At the end of the hearing, at the request of plaintiff's counsel, the ALJ ordered a CE by a neurologist. (Tr. 96.)

A supplemental hearing was conducted on November 19, 2008 following the issuance of a post-hearing report by consultative examiner Dr. Riaz

-7-

Naseer. (Tr. 18-32.) Plaintiff testified that he still has headaches every day; that they are more intense than before; and that although ibuprofen "seemed to help," on the advice of Dr. Rouchway, he quit taking all of his medications with the exception of his high blood pressure and cholesterol medications. (Tr. 26-27.)

### III. DECISION OF THE ALJ

On December 30, 2008, the ALJ entered an unfavorable decision. The ALJ found plaintiff had the following severe combination of impairments: migraine headaches, hypertension, sleep apnea, posterior fossa arachnoid cyst, obesity, depression, and anxiety. (Tr. 10-11.) The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under the Act. The ALJ determined that, although plaintiff's impairments would prevent him from performing his PRW, they would not prevent the performance of other work existing in significant numbers in the national economy. (Tr. 16-17.) Consequently, the ALJ found plaintiff was not disabled as defined under the Act. (Tr. 17.)

### IV. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and is supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically

determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d 935, 942 (8th Cir. 2009). A five-step regulatory framework is used to determine whether an individual qualifies for disability. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment. Pate-Fires, 564 F.3d at 942. If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Id. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her PRW. Id. The claimant bears the burden of demonstrating she is no longer able to return to her PRW. Id. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work. Id.

## V. DISCUSSION

Plaintiff argues that the ALJ erred in (1) failing to give controlling weight to Dr. Foxen's December 2007 assessment and to consider the factors set forth in 20 C.F.R. §§ 404.1527(d), 416.927(d) (2009) when assessing his opinion; (2) assessing the credibility of his subjective complaints; (3) discrediting the testimony of his wife and failing to give sufficient reasons for discrediting her testimony; and (4) determining his residual functional capacity (RFC).

**1. Treating Physician Dr. Foxen's opinion**

Plaintiff first argues that the ALJ erred in failing to give controlling weight to Dr. Foxen's December 2007 opinion that plaintiff would need to take unscheduled breaks lasting more than thirty minutes on an hourly basis during an eight-hour workday; that he would be

precluded from performing basic work activities during a headache; that he would be incapable of even "low stress" jobs; and that plaintiff would be absent from work more than four times per month.

The ALJ found Dr. Foxen's opinion:

> is entitled to little weight. . . . The opinion is deficient because it does not articulate an objective medical basis for the extreme limitations indicated and is inconsistent with the physician's own medical treatment records and the conservative treatment rendered. Further the opinion is inconsistent with the unremarkable physical examinations of the examining neurologist and is unsupported by the evidence as a whole, including the claimant's daily activities. The limitations appear to be based on the claimant's subjective complaints, rather than on independent medical findings.

(Tr. 15.) Specifically, plaintiff argues Dr. Foxen's opinion is well supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. He argues the ALJ failed to provide an example of any inconsistencies in Dr. Foxen's treatment records. The undersigned disagrees.

The ALJ is required to assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). A treating physician's opinion is generally given controlling weight, but is not inherently entitled to it. Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006). See 20 C.F.R. § 404.1527(d)(2). An ALJ may elect under certain circumstances not to give controlling weight to treating doctors' opinions. A physician's statement that is not supported by diagnoses based on objective evidence will not support a finding of disability. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight. Id.; see also Hacker, 459 F.3d at 937; 20 C.F.R. § 404.1527(d)(2). It is the ALJ's duty to resolve conflicts in the evidence. See Hacker, 459 F.3d at 936.

In this case, the limitations set forth by Dr. Foxen are inconsistent with and unsupported by the medical evidence of record,

-10-

including Foxen's own treatment notes. (Tr. 15.) For example, physical and neurological examinations, including those performed by Dr. Foxen, were generally normal. (Tr. 14, 272, 335-36, 338-39, 376-81, 383, 386-87, 400, 411.) Plaintiff did not require emergency room or inpatient treatment for headaches, nor did he require medical treatment for his fossa arachnoid cyst. (Tr. 14.) Additionally, the record evidence indicates that medication helped control plaintiff's impairments. (Tr. 14, 64, 318, 331, 411.) In January 2008, Dr. Foxen noted that plaintiff's headaches were "improving." (Tr. 411.)

Moreover, Dr. Foxen's only reference to objective medical evidence is a reference to plaintiff's 2004 brain CT scan showing his fossa arachnoid cyst in response to a question asking him to identify any positive test results or objective signs of plaintiff's headaches. (Tr. 357.) Dr. Foxen's reference indicates that the brain cyst could be the cause of plaintiff's headaches. However, it does not provide objective medical evidence supporting the work-related limitations imposed by him. When asked to explain his reasons for concluding that plaintiff was incapable of low stress jobs, Dr. Foxen left that question blank. (Tr. 359.) The extreme limitations assessed by Dr. Foxen appear to be based on plaintiff's subjective complaints, which the ALJ found not fully credible, rather than on objective medical evidence. See Kirby v. Astrue, 500 F.3d 705, 709 (8th Cir. 2007). Therefore, the ALJ properly determined that Dr. Foxen's assessment was entitled to little weight because it was unsupported by the record medical evidence and was instead based on plaintiff's subjective complaints.

As to plaintiff's argument that the ALJ failed to weigh the opinion of Dr. Foxen using the factors set forth at 20 C.F.R. § 404.1527, the undersigned disagrees. The regulations specifically require the ALJ to assess the record as a whole to determine whether the treating physicians' opinions are inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). The undersigned concludes the ALJ did so here and diminished the weight given Dr. Foxen's opinions for proper reasons.

**2. Credibility of subjective complaints of plaintiff**

Plaintiff next argues the ALJ erred in assessing the credibility of his subjective complaints, as well as those of his wife. With respect to plaintiff, the ALJ found, "[t]he claimant's daily activities are inconsistent with his allegations of disabling symptoms and limitations . . [he can] perform light household chores, and drive an automobile." (Tr. 13.) Plaintiff argues the ALJ failed to explain how these activities are inconsistent with his assertion that he is not capable of doing full time work, citing Banks v. Massanari, 258 F.3d 820, 832 (8th Cir. 2001) (the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work). The undersigned disagrees.

In concluding that plaintiff's testimony was not entirely credible, (Tr. 13-16), the ALJ's consideration of the subjective aspects of plaintiff's complaints properly included a discussion of the factors set forth in the regulations at 20 C.F.R. §§ 404.1529, 416.929(c) (2009). See also Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Where an ALJ specifically discredits a claimant's testimony for stated reasons, the court normally defers to the ALJ's determination of credibility. See Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991). The appropriate question is not whether a claimant experiences the symptoms alleged, but whether the pain is so disabling as to prevent him from performing any type of work. See McGinnis v. Chater, 74 F.3d 873, 874 (8th Cir. 1996).

As the ALJ discussed, plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence of record. (Tr. 13-16.) As the ALJ noted, contrary to plaintiff's alleged inability to work, his physical and neurological examinations were generally normal. (Tr. 14, 272, 335-36, 338-39, 376-81, 383, 386-87, 400, 411.) Plaintiff had a normal gait, negative straight leg raises, and normal grip strength. (Tr. 14, 272, 317.) Several examining and treating physicians also indicated plaintiff had no sensory deficits. (Tr. 14, 317, 376, 386.) See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004) ("[L]ack of objective medical evidence is a factor an ALJ may consider."). Here,

with respect to plaintiff's headaches, plaintiff did not require emergency room or inpatient treatment for his headaches, nor did he require medical treatment for his fossa arachnoid cyst. (Tr. 14.) See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997) (allegations of disabling pain may be properly discounted because of inconsistencies such as minimal or conservative medical treatment).

Further, the record evidence indicates that treatment and medication were effective in controlling plaintiff's impairments. (Tr. 14.) Specifically, Dr. Rucker noted that plaintiff's hypertension was "controlled." (Tr. 14, 318.) A sleep study indicated that plaintiff's use of the CPAP machine resulted in a "normal" apnea/hypopnea index and elimination of significant nocturnal desaturations. (Tr. 331.) Plaintiff also testified that the CPAP machine helped his sleep. (Tr. 64.) Additionally, Dr. Foxen noted that plaintiff's headaches improved with the use of Topamax and decreased use of ibuprofen. (Tr. 14, 411.) See Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.") (citations and quotation omitted).

The ALJ also noted gaps in plaintiff's treatment for headaches. (Tr. 13.) In particular, the ALJ noted that during the relevant time period, plaintiff did not seek treatment for headache pain until June 2007, over a year after his alleged disability onset date of February 26, 2006. (Tr. 13, 173, 381.) Plaintiff's failure to seek treatment for his headaches seemingly contradicts his allegation that his headaches were disabling. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."). The ALJ also noted that plaintiff did not appear to be in any obvious physical or mental discomfort during the administrative hearings. (Tr. 15.) See Johnson v. Apfel, 240 F.3d 1145, 1147-48 (8th Cir. 2001) (ALJ's personal observations of claimant's demeanor during the hearing is completely proper in making credibility determinations).

The ALJ also considered plaintiff's daily activities in finding his subjective complaints less than fully credible. (Tr. 13.) See 20 C.F.R.

§§ 404.1529(c)(3)(I), 416.929(c)(3)(I). Plaintiff testified that he maintained his personal hygiene without assistance, and that he read magazines, drove, and performed light household chores such as vacuuming, doing laundry, and washing dishes. (Tr. 40, 51-54, 56.) See Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001)(activities that are inconsistent with a claimant's assertion of disability reflect negatively on claimant's credibility). The undersigned concludes the ALJ properly considered his daily activities in finding his subjective complaints less than fully credible.

### 3. Plaintiff's wife's testimony

Plaintiff also argues the ALJ failed to properly consider his wife's credibility and to give sufficient reasons for discrediting her testimony. He argues his wife's testimony is consistent with his own, as well as those of his physicians.

The ALJ gave "little weight" to the testimony of plaintiff's wife because it was "inconsistent and unsupported by the objective evidence of record." (Tr. 15.) The undersigned concludes the ALJ properly considered plaintiff's wife's testimony and determined that it was entitled to little weight. The ALJ noted that plaintiff's wife's testimony corroborated plaintiff's testimony and reiterated his subjective complaints. (Tr. 15, 78-88.) After discrediting plaintiff's testimony, the ALJ found that his wife's testimony was also entitled to little weight because it was inconsistent with and unsupported by the objective evidence of record, as discussed above. See Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992) (a finding concerning the credibility of third party evidence may involve the same evidence used to find a claimant not credible). Therefore, the ALJ properly considered the testimony of plaintiff's wife and afforded it little weight. Moreover, even assuming arguendo that the ALJ failed to give sufficient reasons for discrediting plaintiff's wife's testimony, any error is harmless. See Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000) (where the same evidence that supports discounting the testimony of plaintiff also supports discounting the testimony of a third party, the

ALJ's failure to give specific reasons for disregarding the third party testimony is inconsequential).

Because the ALJ referred to the Polaski considerations and cited other inconsistencies in the record, he properly found Plaintiff not credible. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000); McKinney v. Apfel, 228 F.3d 860, 864 (8th Cir. 2000). The ALJ articulated the inconsistencies upon which he relied in discrediting plaintiff and his wife's testimony. Therefore, the undersigned concludes substantial evidence supports his credibility finding.

## 4. Residual Functional Capacity (RFC)

To the extent plaintiff contends the ALJ's residual functional capacity (RFC) assessment is not supported by substantial evidence, this argument is without merit.

A claimant's RFC represents the most that he can do despite the combined effect of his credible limitations. See 20 C.F.R. §§ 404.1545, 416.945 (2009). RFC is a medical question and the ALJ's assessment of RFC must be supported by substantial evidence in the record. Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001), citing Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001); Singh v. Apfel, 222 F.3d at 451. RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of his limitations. Donahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001), citing Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995); 20 C.F.R. § 416.945(a). While the ALJ is not restricted to medical evidence alone in evaluating RFC, the ALJ is required to consider at least some evidence from a medical professional. Lauer, 245 F.3d at 704. Defendant has the burden of proof for an assessment of RFC that will be used to prove that a claimant can perform other jobs in the national economy. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000).

Here, the ALJ found that plaintiff retained the RFC to lift fifty pounds occasionally and twenty-five pounds frequently. He could stand or walk for up to six hours in an eight-hour workday. The ALJ further found that plaintiff was limited to simple, repetitive tasks with no more

-15-

than occasional interaction with the public, co-workers, and supervisors. (Tr. 12.)

The ALJ's RFC assessment is supported by the medical evidence and other credible evidence of record discussed above. To restate, physical and neurological examinations were generally normal. (Tr. 14, 272, 335-36, 338-39, 376-81, 383, 386-87, 400, 411.) Plaintiff did not require emergency room or inpatient treatment for headaches, nor did he require medical treatment for his fossa arachnoid cyst. (Tr. 14.) Plaintiff had a normal gait, negative straight leg raises, normal grip strength, and no significant sensory deficits. (Tr. 14, 272, 317, 376, 386). Medication helped control his alleged impairments. (Tr. 14, 64, 318, 331, 411). See Brown v. Barnhart, 390 F.3d at 535, 540 (8th Cir. 2004)(treating physician's opinion is due controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record).

Based on the above, the undersigned concludes the ALJ properly assessed plaintiff's RFC.

## VI. RECOMMENDATION

For the reasons set forth above, it is the recommendation of the undersigned that the decision of the Commissioner of Social Security be affirmed under Sentence 4 of 42 U.S.C. § 405(g).

The parties are advised that they have 14 days to file documentary objections to this Report and Recommendation. The failure to file timely documentary objections may waive the right to appeal issues of fact.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on February 8, 2010.